O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CV 13-02531 DDP |
| | ) | [CR 08-01147 DDP] |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER DENYING SECTION 2255 MOTION** |
| | ) | |
| NATHANIEL NEWHOUSE, | ) | |
| | ) | |
| Defendants. | ) | |

Presently before the court is Defendant/Petitioner Nathaniel Newhouse's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Having considered the submissions of the parties, the court denies the motion and adopts the following Order.

**I.   Background**

After a jury trial, Defendant was convicted of three counts of possession with the intent to distribute controlled substances. (Dkt. 197.)[1]  The court sentenced Defendant to 96 months imprisonment and three years of supervised release. (Id.)  The Ninth Circuit affirmed Defendant's conviction and the district

---

[1] "Dkt." refers to the docket in the underlying criminal case, No. CR 08-1147-DDP.

court's denial of Defendant's motion to suppress evidence.  <u>United States v. Newhouse</u>, 464 Fed. Appx. 181 (9th Cir. 2012).  In holding that officers had probable cause to arrest Defendant, the court provided the following background:

> Newhouse was arrested following DEA agents' surveillance of a pharmacy where pharmacists had alerted the DEA to an unusual number of prescriptions for oxycodone filled by patients associated with Dr. Efrain Sanchez. Agents observed three persons each fill two prescriptions for popular street drugs containing oxycodone and hydrocodone prescribed by Dr. Sanchez, and depart together with a fourth person who did not fill any prescriptions. At least one of the individuals appeared to have multiple, additional prescriptions in his possession. Agents followed the individuals to the parking lot of a donut shop fourteen miles away where, one hour later, they observed a rendezvous with two other vehicles. The individual who did not fill any prescriptions delivered a white paper bag that appeared to be a pharmacy bag to Mr. Newhouse.

<u>Id.</u>

Defendant now moves for a new trial or, in the alternative, a reduction in sentence to 48 months.  Defendant argues that relief is warranted because he received ineffective assistance of counsel. Specifically, Defendant contends that counsel was ineffective because he (1) failed to obtain surveillance video from the donut shop, (2) convinced Defendant to waive his right to testify, and (3) failed to adequately prepare for trial.[2]

**II.  Legal Standard**

Section 2255 allows federal prisoners to file motions to vacate, set aside, or correct a sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of

---

[2] Defendant's Fourth Ground for relief is that counsel should have introduced the donut shop surveillance video to impeach an arresting agent's testimony.  This claim overlaps with Defendant's First claim for relief.

1   the United States, or that the court was without jurisdiction to

2   impose such sentence, or that the sentence was in excess of the

3   maximum authorized by law, or is otherwise subject to collateral

4   attack[.]"  28 U.S.C. § 2255(a).  To show ineffective assistance of

5   counsel, a defendant must demonstrate (1) that counsel's

6   performance was deficient and fell below an objective standard of

7   reasonableness, meaning "counsel made errors so serious that

8   counsel was not functioning as the 'counsel' guaranteed the

9   defendant by the Sixth Amendment," and (2) the defendant was

10  prejudiced as a result and deprived of a fair trial.  Strickland v.

11  Washington, 466 U.S. 668, 687 (1984).

12  **III. Discussion**

13       A.   Counsel's Failure to Obtain Surveillance Footage

14       Defendant argues that government agents falsely testified as

15  to what they observed in the donut shop parking lot.  Defendant

16  contends that the donut shop's surveillance camera footage would

17  have established that the agents did not have probable cause to

18  arrest Defendant.  He further asserts that he asked his counsel to

19  obtain the footage, and that, had counsel introduced the footage,

20  "the result of the district court's motion to suppress and trial

21  would have been different."[3]

22       Defendant's argument does not satisfy either prong of the

23  Strickland test.  "[C]ounsel has a duty to make reasonable

24  investigations or to make a reasonable decision that makes

25  particular investigations unnecessary.  In any ineffectiveness

26  

27       [3] Although the government's opposition makes repeated
    reference to the declaration of Defendant's counsel, the
28  government's citation to the docket is incorrect, and the
    declaration does not appear to have been filed elsewhere.

1  case, a particular decision not to investigate must be directly
2  assessed for reasonableness in all the circumstances, applying a
3  heavy measure of deference to counsel's judgments." Strickland,
4  466 U.S. at 691.  The court's assessment must look to both the
5  evidence already known to counsel and to "whether the known
6  evidence would lead a reasonable attorney to investigate further."
7  Wiggins v. Smith, 539 U.S. 510, 527 (2003).

8      Here, as an initial matter, is not clear whether the
9  surveillance footage to which Defendant refers exists.  Even
10  assuming that it does, and that Defendant did ask his counsel to
11  obtain it, counsel's failure to do so was not unreasonable.
12  Defendant argues that the footage would have revealed what really
13  happened in the donut shop parking lot.  According to Defendant, he
14  agreed to meet Leslie Wilson at the donut shop parking lot to give
15  his opinion regarding the authenticity of several prescriptions
16  others had had filled.  (Declaration in Support of Motion at 1.)
17  Defendant also asked his wife to meet him at the donut shop to
18  deliver money to him.  (Id.)  When Defendant arrived at the donut
19  shop an hour later, Wilson's car was already there.  (Id. at 2.)
20  Defendant's wife arrived a few minutes later.  (Id.)  Wilson
21  entered Defendant's car with a bag of medication, then returned to
22  her car.  (Id.)  Defendant then walked to his wife's car to
23  retrieve the money he had asked her to bring.  (Id.)

24      Defendant's version of these events does not differ from the
25  version elicited through testimony at trial.  Indeed, the Ninth
26  Circuit's recitation of the facts of the case is consistent with
27  Defendant's version.  Thus, even if surveillance footage of the
28  events in the parking lot did exist, and assuming Defendant did ask

counsel to obtain it, it would not have been unreasonable for counsel to conclude that the footage was not necessary, as it would not have added anything to the evidence already known to counsel.

Even if counsel had unreasonably failed to investigate the camera footage, Defendant cannot show that he was prejudiced as a result. As discussed above, Defendant's version of events is consistent with the trial testimony, as recounted by the Ninth Circuit. The Ninth Circuit concluded, based upon those facts, that officers did have probable cause to arrest Defendant and that the district court properly denied Defendant's motion to suppress. Defendant cannot show, therefore, that the outcome of the suppression motion would have been different if camera footage depicting those same facts had been introduced.

Nor can Defendant show that the absence of camera footage prejudiced him at trial. With respect to this argument, Defendant contends that the video would have shown that, contrary to the agents' testimony, he did not approach the rear of his own car at any time, he had not started his car when agents pulled into the parking lot and blocked his car with their own vehicle, and he did not have any pill bottles in his pockets or in his glove compartment. (Decl. at 2-3.) It is unlikely that any of these facts would have resulted in acquittal. Whether Defendant's car was running or not and whether or not he approached his trunk immediately prior to his arrest were not central issues in the case. Nor is there any dispute that Defendant possessed all three of the substances at issue. Defendant argues that two of the drugs were in a pharmacy bag on top of the car, and not on his person or in his glove compartment, while the third, consistent with agents'

1  testimony, was found in his trunk.  (Decl. ¶¶ 2(g), 5.)  Thus, the

2  camera footage would only have confirmed that Defendant possessed

3  the drugs.

4       Even if the camera footage would have called into question the

5  entirety of the arresting agents' testimony, the government

6  introduced other compelling evidence of Defendant's guilt.  Two

7  different witnesses testified that they entered into a scheme with

8  Defendant and others to obtain monthly painkiller prescriptions

9  from unethical doctors and then pass those prescriptions on to

10 Defendant in exchange for cash.  (CR 222, 135-149; 187-194.)  One

11 witness also testified that he saw bags of medication inside the

12 trunk of Defendant's car "and people [Defendant] was doing business

13 with.  It is like a circus out there."  (Id. at 151, 169-70.  This

14 testimony aligned closely with later testimony from a government

15 expert about illegal prescription drug distribution schemes in

16 general.  (Id. at 251-269.)  In light of this evidence, it is

17 highly unlikely that anything the surveillance camera footage of

18 the arrest might have shown would have changed the jury's decision

19 to convict Defendant.

20      B.   Waiver of Right to Testify

21      Next, Defendant asserts that counsel convinced him to waive

22 his right to testify in exchange for the government's agreement not

23 to introduce evidence of controlled substances discovered at

24 Defendant's home and storage locker.  Defendant argues that this

25 advice was "faulty" because "the medication was being temporarily

26 stored to facilitate [Defendant's] and another person's caretaker

27 responsibilities."  Defendant argues that, had he been "correctly

28 advised," he would have testified on his own behalf, as "the

1    contents of all the bottles were later dumped into a plastic bag

2    and shown to the jurors at trial." (Decl. ¶ 7.)

3        The agreement to which Defendant refers was disclosed to the

4    court prior to trial, both in writing and at a pre-trial hearing.

5    (Dkt. 136 at 1; Dkt. 214 at 6.)   The government agreed that it

6    would "not present or rely on [evidence seized from Defendant's

7    home or from his storage locker] at trial, conditioned on defendant

8    Newhouse not opening the door to admission of such evidence . . .

9    ." (Dkt. 136 at 1:21-23.)  Thus, contrary to Defendant's argument,

10   it does not appear that the parties ever reached an agreement that

11   would have required Defendant to waive his right to testify.[4]

12   Further, it is unclear from the record and the submissions of the

13   parties whether the plastic bag shown to jurors at trial contained

14   pill bottles seized from Defendant's car or from his home and

15   storage locker.

16       Regardless, Defendant cannot satisfy the second, prejudice

17   prong of Strickland.  As described above, the government presented

18   strong evidence of Defendant's guilt.  Furthermore, it is far from

19   clear that, in the absence of counsel's alleged advice, Defendant

20   would have testified in his own defense.  The government possessed

21   a great deal of impeachment evidence, including evidence of money

22   laundering and tax fraud and, at the very least, Defendant's prior

23   convictions for perjury and welfare fraud.  (Dkt. 117.)  Even if

24   Defendant had testified, the testimony he now claims he would have

25   given would not have helped his case.  Defendant criticizes

26

27       [4] Although the government represents that counsel has declared
28   that he never advised Defendant otherwise, the court has been
     unable to locate counsel's declaration in the record.

1   counsel's recommendation as faulty because "the medication was

2   being temporarily stored to facilitate [Defendant's] and another

3   person's caretaker responsibilities."   The court, however, granted

4   a motion in limine precluding this very argument.   (Dkt. 137.)   As

5   the government contended, even if Defendant had been storing and

6   distributing medication purely in his capacity as a caretaker, that

7   would not have been a defense to the charges against him, absent

8   authorization from the Attorney General to distribute controlled

9   substances.   (Dkt. 113 at 4-6.)   There is no dispute that Defendant

10  had no such authorization.   Thus, even if Defendant testified, his

11  testimony would have been, at best, irrelevant, even if allowed.

12  Defendant could not, therefore, have been prejudiced by counsel's

13  recommendation that he not testify.

14        C.   Counsel's Preparation for Trial

15        Lastly, Defendant argues that counsel "stated on the record

16  that he was not adequate[ly] prepared for trial."   That statement

17  does not appear on the page of the transcript Defendant has

18  identified, or anywhere else in the document to which Defendant

19  cites.   The government represents that counsel has denied being

20  unprepared for trial.[5]   The court's own review of counsel's pre-

21  trial representation and performance during trial itself does not

22  reflect any lack of preparation on counsel's part.   Nor does

23  Defendant state what counsel should have done differently to

24  prepare for trial or failed to do in advance of trial.   The only

25  deficiency Defendant alleges is counsel's failure to contact co-

26  Defendant Deborah Barker.   Defendant does not explain how Barker's

27  

28        [5] (See notes 3 and 4, _supra_.)

8

1   testimony would have aided him and, in any event, Barker died over

2   a year before Defendant's trial began.  (Dkt. 198.)  Defendant has

3   not satisfied either of the <u>Strickland</u> prongs with respect to

4   counsel's preparation for trial.

5   **IV.   Conclusion**

6        For the reasons stated above, Defendant's Section 2255 motion

7   is DENIED.

8

9   IT IS SO ORDERED.

10

11  Dated: October 6, 2016

12                                  DEAN D. PREGERSON
                                    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28